# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JULIO ESCOBAR, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AIRCRAFT SERVICE INTERNATIONAL ) <br> GROUP, INC., and DISTRICT LODGE 142, ) <br> INTERNATIONAL ASSOCIATION OF ) <br> MACHINISTS AND AEROSPACE ) <br> WORKERS, AFL-CIO, ) <br> ) <br> Defendants. ) | No. 18 C 2308 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons explained below, defendants' motions for summary judgment are granted.

## BACKGROUND

Plaintiff, Julio Escobar, brought this action for national-origin and age discrimination against his former employer, Aircraft Service International Group, Inc. ("ASIG"), asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; and 42 U.S.C. § 1981. Escobar also sues his union, District Lodge 142, International Association of Machinists and Aerospace Workers, AFL-CIO (the "Union") for breach of the duty of fair representation.

# MATERIAL FACTS

The facts are largely undisputed.[1] On March 4, 2013, ASIG, an aviation-services company, hired Escobar as a ramp agent at its Chicago O'Hare International Airport location. Escobar joined the Union and remained a member in good standing throughout his employment with ASIG. The terms and conditions of Escobar's employment were set forth in collective bargaining agreements ("CBAs") between ASIG and the Union. The first CBA was effective from January 2012 to January 2016, and in February 2014, Escobar signed an acknowledgment that he had received a copy of it. The second CBA was effective from January 2016 to January 2019. The two CBAs were substantially the same with respect to the grievance and arbitration process, the right of ASIG to discharge for just cause, and the grounds for discipline and termination described therein.

In September 2013, Escobar moved from his original position to the position of Ground Service Equipment ("GSE") mechanic. His job duties included maintaining and repairing automotive and mechanical equipment used for aircraft fueling and related operations. ASIG's GSE mechanics work in three shifts: the first/morning shift, from 7:00 a.m. to 3:00 p.m.; the

---

[1] Escobar does not dispute the vast majority of defendants' Local Rule 56.1(a)(3) statements of material fact. (ECF Nos. 89, 90, Pl.'s Resps. Defs.' L.R. 56.1 Stmts.) In the few instances in which Escobar does dispute a properly-supported fact statement in whole or in part (ECF No. 89, Pl.'s Resp. ASIG's L.R. 56.1 Stmt. ¶¶ 10, 11, 15, 32, 33, 36; ECF No. 90, Pl.'s Resp. Union's L.R. 56.1 Stmt. ¶¶ 15, 43, 49, 50, 51, 78), the disputes are not supported by specific references to the record as required by the local rule. Therefore, the Court deems Escobar to have admitted all properly-supported material facts set forth in defendants' statements. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) (when a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the local rule, those facts are deemed admitted for purposes of the motion). Escobar's response to paragraph 15 of ASIG's fact statement is that it is simultaneously disputed and undisputed; the Court assumes there was an editing error and that Escobar intended to dispute the statement. Nevertheless, the dispute is not supported and the statement ultimately is not germane to the disposition of ASIG's motion. The Court has also disregarded immaterial statements of fact, statements that are not supported by the evidence cited, and statements that are not those of fact but of law (e.g., ECF No. 50, ASIG's L.R. 56.1 Stmt. ¶ 70). Certain material facts are set out separately within the Court's discussion, below.

second/afternoon shift, which was Escobar's regular shift, from 3:00 p.m. to 11:00 p.m.; and the third/night shift, from 11:00 p.m. to 7:00 a.m. On occasion, when ASIG is shorthanded or when airline schedules require additional assistance, GSE mechanics are required to work more than one shift in succession.

On January 13 and 14, 2017, ASIG assigned Escobar to work the second and third shifts. At about 2:00 a.m. on January 14, Escobar took a meal break inside an ASIG vehicle, which he parked in a parking lot that was not owned by ASIG. Escobar testified at his deposition that he took the truck "far away" from ASIG's property so that people would not bother him, because he needed a "[n]ice little rest" that night. (ECF No. 85-5, Dep. of Julio Escobar 184.) During the break, Escobar sat in the driver's seat with his head back and his eyes closed. At some point, a coworker, Angel Lazarini, approached the vehicle, and Escobar woke up when Lazarini knocked on the window.[2] When Escobar opened his eyes, he saw that Lazarini was standing close to the window, holding up a cell phone with its light on. He appeared to be taking a video of Escobar. Lazarini laughed and quickly walked away from the vehicle.[3]

Later that day, Lazarini submitted the video he recorded, which is about one minute and five seconds long and depicts Escobar sleeping in the driver's seat of an ASIG vehicle during working

---

[2] At his deposition, Escobar said that he was "not sure" if he had fallen asleep, but during the same sequence of questions affirmed repeatedly that he "woke up" when Lazarini knocked on the window. (Escobar Dep. 185-187.) Escobar further stated: "When I turned my face, wake up, that's when [Lazarini] took the picture." (*Id.* 190.) Later in the deposition, Escobar complained that the Union did not help him after he had "tak[en] a nap in [his] lunchtime." (*Id.* 345-46.)

[3] There was previous friction between Escobar and Lazarini.

hours,[4] to ASIG management. Michael Burke, the GSE Manager, and Judy Matthys, a Human Resources Specialist, viewed the video. Matthys and Burke jointly determined that the video clearly depicted Escobar asleep in an ASIG vehicle during working hours. Based on this determination and the fact that the CBA states that sleeping during working hours is a "Group III" violation of ASIG rules (meaning that the violation would result in immediate discharge except in cases involving "unusual circumstances"), Matthys and Burke decided to terminate Escobar's employment.

On January 25, 2017, Escobar and a Union shop steward, Edward Dahlin, were summoned to a meeting with Matthys and Burke, during which Escobar was notified that his employment was being terminated for his having slept during working hours in violation of the CBA's prohibition on such conduct. ASIG provided a written termination notice to that effect. Matthys showed Lazarini's video to Escobar and Dahlin. Escobar did not dispute that the video depicted him sleeping during working hours in an ASIG truck, nor did he express any belief that ASIG's termination decision was based on his age or national origin or otherwise discriminatory.

On January 26, 2017, Dahlin filed a grievance on Escobar's behalf pursuant to the terms of the CBA, contesting the termination. The grievance stated that Escobar said that he was "forced" to work a second shift; he was sick; a supervisor said that he could go to lunch; he was "resting[,] not sleeping"; and he wanted his job back. (ECF No. 51-1, Defs.' J.A., Ex. Q.) The grievance did not include any complaint of unlawful discrimination or harassment. After a hearing at which the Union represented Escobar, ASIG denied the grievance on February 1, 2017. Thereafter, the grievance was handled by John Coveny, the General Chairperson of the Union's District Lodge 142,

---

[4]The CBA does not define "working hours," but ASIG and the Union submit undisputed evidence that they consider a lunch break to be working hours, (ECF No. 51, Defs.' J.A., Exs. A, D), and Escobar conceded at his deposition that lunch occurred during working hours (Escobar Dep. 201).

4

who pursued further steps in the grievance process. ASIG did not change its position, and ultimately upheld the termination. The next step of the contractual grievance process would be arbitration, but, after Coveny consulted District Lodge 142's President, David Supplee, about the matter, Coveny determined that there was no chance of prevailing at arbitration and declined to pursue a further appeal. On November 2, 2017, the Union sent Escobar a letter notifying him that after a thorough review of the facts and circumstances of the matter as well as decisions in similar cases, it would not further appeal the termination.

On March 20, 2017, Escobar filed a charge with the National Labor Relations Board ("NLRB") alleging that the Union had violated the National Labor Relations Act ("NLRA") by "refusing to process" the grievance regarding his termination "for arbitrary or discriminatory reasons or in bad faith." (Defs.' J.A., Ex. Z.) On March 23, 2017, Escobar filed charges of discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging that ASIG had discriminated against him on the basis of his national origin and age. On the same day, Escobar also filed IDHR and EEOC charges against the Union, alleging that it had denied him representation on the basis of his national origin and age. On May 5, 2017, the NLRB dismissed Escobar's charge against the Union, stating that ASIG was exempt from NLRA coverage.

On May 31, 2017, Escobar filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. He was represented by counsel, William Teitelbaum. Schedule A/B of Escobar's petition, titled "Property," required Escobar to state whether he had "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment." (Defs.' J.A., Ex. CC.) Escobar marked "No." (*Id.*) On August 24, 2017, Escobar amended his Schedule A/B to answer this question in the affirmative, stating that "[o]n

5

March 23, 2017, Debtor filed a discrimination complaint with the EEOC and IL Dept of Human Rights against IAMAW District Lodge 142. The charge of discrimination is pending." (Defs.' J.A., Ex. DD.) He did not, however, identify the pending claim against ASIG. Escobar again amended his Schedule A/B on September 5, 2017 to add another claim to his answer to this question, concerning a cause of action he believed he had against witnesses in a case against him that had been dismissed. (Defs.' J.A., Ex. EE.) He still did not identify the claim against ASIG. On September 7, 2017, a discharge order was entered in Escobar's bankruptcy case; at the time of the discharge, his schedules did not include his pending claim against ASIG. To date, Escobar has not moved to reopen his bankruptcy case to correct the nondisclosure or otherwise sought to amend his schedules to include the claim against ASIG.

On December 28, 2017, the EEOC and IDHR issued Escobar notices of dismissal and the right to sue on his charges against the Union and ASIG. He filed the instant action on March 29, 2018. Escobar alleges that ASIG discriminated against him on the basis of national origin and age when it assigned him more overtime than other employees, required him to complete other employees' assignments, subjected him to a hostile work environment, and terminated his employment. He alleges that the Union discriminated against him on the basis of national origin and age when it failed to file multiple grievances on his behalf and inadequately handled the grievance concerning his termination.

Defendants filed separate motions for summary judgment.

## DISCUSSION

**A.     Legal Standards**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016). The Court must construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmovant. *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). Under Rule 56, the movant has the initial burden of informing the court why a trial is not necessary. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, the movant's initial burden may be discharged by pointing out to the court that there is an absence of evidence to support the nonmovant's case. *Id.* Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (internal quotation marks and citation omitted). The nonmovant need not produce evidence in a form that would be admissible at trial, but he must go beyond the pleadings to demonstrate that there is evidence upon which a jury could reasonably find in his favor. *Id.* at 1168-69 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

**B.     ASIG's Motion**

ASIG presents several arguments, the first of which is dispositive. Citing *Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006), ASIG contends that the doctrine of judicial estoppel forecloses Escobar's claims against ASIG because he failed to disclose them in his bankruptcy. "Judicial estoppel is a flexible equitable doctrine designed to prevent the perversion of the judicial process. The doctrine protects the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013) (internal quotation marks and citations omitted). In *Cannon-Stokes*, the Seventh Circuit held that "a debtor in bankruptcy who denies owning an asset, including a chose in

7

action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." 453 F.3d at 448; *see also Kimble v. Donahoe*, 511 F. App'x 573, 575 (7th Cir. 2013) ("By omitting her administrative charge against the Postal Service, Kimble represented that she had no claim against the Postal Service at the time of her bankruptcy, and she is estopped from arguing otherwise in a subsequent case."). Here, Escobar represented that he had no claim against ASIG not only in his initial bankruptcy filing, but in two subsequent amendments to his schedules. Furthermore, like the debtor in *Cannon-Stokes*, Escobar has never sought to reopen the bankruptcy case to amend his schedules and attempt to allow his creditors to benefit from any recovery against ASIG, even after ASIG filed its motion for summary judgment in the instant case. Accordingly, Escobar is judicially estopped from litigating his claims against ASIG.

Escobar, citing *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014) and decisions relying on *Spaine*, asserts that judicial estoppel should not apply because he did not intend to deceive the bankruptcy court and told the bankruptcy trustee that he had pending administrative charges against ASIG. Escobar offers his own declaration, in which he states that he "shared with" Teitelbaum, his bankruptcy attorney, that he "filed a charge of discrimination against my employer with the . . . EEOC." (ECF No. 85-4, Decl. of Julio Escobar ¶ 18.) He also presents the declaration of Teitelbaum, who states that it was his "understanding" that Escobar had pending administrative charges against ASIG and that Escobar was "forthcoming with this information." (ECF No. 85-2, Decl. of William Teitelbaum ¶¶ 8-9.) Teitelbaum also states that on August 21, 2017, he sent the bankruptcy trustee, Catherine Steege, an email informing her of the charges against ASIG and that the email contained an attachment titled "Escobar TE docs." (*Id.* ¶¶ 12-13.) He does not describe what documents were in the attachment. In support of these statements, Teitelbaum cites Exhibit A of Escobar's Appendix, an unauthenticated email that appears to be from him to "Trustee Steege,"

8

regarding "Julio Escober" [sic], the body of which states in full: "The debtor filed charges of employment discrimination with the IL Dept of Human Rights and EEOC. I attached copies of the charges as you requested. The debtor has not consulted with an attorney." (ECF No. 85, Pl.'s App.) The email in Exhibit A does not refer to charges against ASIG (or any entity) or mention ASIG, nor does it show that there was even an attachment to the email. Escobar has redacted from the exhibit what appears to be further emails in the thread, and provides no explanation for the redactions. Teitelbaum also cites Exhibit B of Escobar's Appendix, which is also unauthenticated and appears to be a desktop screenshot of a PDF document titled "Escobar TE docs," which does not show that it was attached to the Exhibit A email (or any email). (ECF No. 85-1.) These materials are insufficient to create a genuine issue as to whether the bankruptcy trustee received notice of the claim against ASIG, in particular, such that the trustee could assess it and decide on a course of action.

The Court is also mindful of the fact that Escobar's bankruptcy attorney amended the schedules just three days after the August 21, 2017 email to Steege, but to disclose only the claim against the Union and not ASIG. Escobar suggests that his attorney is to blame for the omission, but the Seventh Circuit rejected a similar argument in *Cannon-Stokes*, stating: "[A] debtor in bankruptcy is bound by [his] own representations, no matter why they were made, at least until the debtor moves to amend the disclosures and pay the creditors their due (a step that, to repeat, [plaintiff] has not taken). The remedy for bad legal advice lies in malpractice litigation against the offending lawyer." 453 F.3d at 449. *Cannon-Stokes* governs, and *Spaine* and its progeny are distinguishable, because Escobar has failed to take any action to correct his previous nondisclosures.

Accordingly, the doctrine of judicial estoppel bars Escobar's claims against ASIG. In view of this ruling, the Court need not discuss ASIG's remaining arguments for summary judgment.

**C.     The Union's Motion**

Escobar alleges that the Union breached its duty of fair representation by failing to file multiple grievances on his behalf from September 2016 to early 2017 and with respect to its handling of his termination. When a labor organization is selected as the exclusive representative of the employees in a bargaining unit, "it has a duty, implied from its status under § 9(a) of the NLRA as the exclusive representative of the employees in the unit, to represent all members fairly." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998). To prevail on a claim that this duty has been breached, a member of the bargaining unit must demonstrate that the Union's conduct toward him was arbitrary, discriminatory, or in bad faith, and that his underlying grievance would have been meritorious. *Id.*; *see also Ooley v. Schwitzer Div., Household Mfg.*, 961 F.2d 1293, 1302-04 (7th Cir. 1992).

The Union asserts that Escobar's challenge to the Union's handling of any complaints or grievances he purportedly had prior to his termination is untimely. The Court agrees. The Union contends, and plaintiff does not dispute, that Escobar's claims against it are subject to a six-month statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-70 (1983). The limitations period for claims based on a union's refusal to act on a grievance begins to run from the date of a final decision or when the plaintiff knew or should have known, with reasonable diligence, that no further action would be taken on his grievance. *Richards v. Local 134, IBEW*, 790 F.2d 633, 636 (7th Cir. 1986); *Metz v. Tootsie Roll Indus.*, 715 F.2d 299, 304 (7th Cir. 1983). Escobar filed the instant action on March 29, 2018, and his employment with ASIG was terminated in January 2017. The statute of limitations with respect to grievances Escobar had prior to his termination ran

well before he filed this suit. Escobar argues that his challenge to pre-termination conduct is timely because the acts are part of a continuing violation. The Court is unpersuaded. Escobar's argument is poorly articulated and conclusory, and he cites no authority that supports the proposition. While a plaintiff may use events outside of the limitations period to "'shed light on the true character of matters occurring within the limitations period'" as an evidentiary principle, such events cannot form the basis for a separate cause of action. *Cantrell v. IBEW, Local 2021*, 32 F.3d 465, 468 (10th Cir. 1994) (quoting *Local Lodge No. 1424 v. NLRB*, 362 U.S. 411, 416-17 (1960)). Moreover, continued union inactivity after an initial failure to respond to a complaint or grievance request does not constitute a continuing violation of the duty of fair representation. *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 916 (7th Cir. 1999).

Even if Escobar's claims relating to complaints made to the Union prior to his termination were timely, he fails to establish a genuine issue of material fact as to the nature of the Union's conduct on those occasions. First, he does not specifically identify which grievances or complaints were brought to the Union and not acted upon, and he does not even attempt to show that they would have been meritorious. Escobar relies on a vague argument that he sent "multiple text messages" to Paul Mauldin, a Union shop steward, "requesting that multiple grievance[s] be filed during this timeframe." (ECF No. 84, Pl.'s Corrected Resp. Union's Mem. at 3.) He cites an unauthenticated and unexplained exhibit containing screenshots of text messages, evidently with Mauldin. The subjects of the text messages, and the messages themselves, are unclear, and Escobar does not explain the exhibit in his declaration or brief or provide context. Escobar further contends, vaguely, that he "also brought in complaints against several employees harassing him during that time," without citing evidence or explaining how the complaints were "brought in." (*Id.*) Second, Escobar fails to point to any evidence that the Union's treatment of him was arbitrary, discriminatory, or in

bad faith. Escobar does not argue (as he alleged in the complaint) or submit any evidence from which one could reasonably conclude that any conduct by the Union prior to his termination was motivated by his national origin or age. Escobar does contend that it acted arbitrarily and in bad faith. A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). A union acts in bad faith when it has an improper motive; to prove bad faith, a union member must adduce "substantial evidence of fraud, deceitful action or dishonest conduct." *Rupe v. Spector Freight Sys., Inc.*, 679 F.2d 685, 691 (7th Cir. 1982) (internal quotation marks and citation omitted). Escobar says that his text messages to Mauldin, Dahlin, and Coveny "went without a response for quite some time." (Pl.'s Corrected Resp. Union's Mem. at 4.) Slow responses are not evidence of irrationality, nor are they substantial evidence of an improper motive. Escobar also accuses Mauldin of sending him "misleading, random, inconsistent, and dishonest text messages," which cannot be reasonably inferred from the unexplained exhibit Escobar cites.

Escobar also fails to establish a genuine issue of fact with respect to his claim that the Union breached the duty of fair representation as to his termination grievance. He contends that the Union breached its duty by (1) inadequately investigating the facts and circumstances of his termination; (2) failing to act "in a timely manner"; and (3) failing to "disclose critical information to Union officers voting to take the grievance to arbitration"; and (4) failing to take the grievance to arbitration. (Pl.'s Corrected Resp. Union's Mem. at 5.)

The following facts, drawn primarily from the declarations of Edward Dahlin, the Union shop steward, and John Coveny, the General Chairperson of District Lodge 142, are undisputed. Dahlin attended the meeting at which Escobar was informed that his employment was being

12

terminated because he was sleeping during working hours. Thereafter, Dahlin filed a grievance challenging the termination on the grounds that ASIG should consider that Escobar had been working two shifts, was sick, on a meal break, and was merely "resting." Dahlin obtained this information from Escobar.[5] After ASIG denied the grievance, the grievance was handled by Coveny, and Dahlin was no longer involved.

Coveny discussed the grievance with Escobar, whom he had never previously met, and watched the video at issue. In March 2017, Coveny subsequently discussed the grievance with Michael Reid, ASIG's General Manager, and presented the following arguments for Escobar's reinstatement: ASIG should not rely on evidence obtained from another employee; Escobar was on a meal break; perhaps a supervisor had given him permission to rest; Escobar was not feeling well; and ASIG should consider his years of service. ASIG again denied the grievance, and Coveny informed Escobar the following day. Coveny then obtained a written response from ASIG in writing. Thereafter, after delays due to personnel flux at ASIG and a company acquisition, Coveny met in July 2017 with ASIG's new Human Resources Manager and presented the same arguments for reinstatement. ASIG did not change its position. On July 28, 2017, ASIG sent Coveny an email denying the grievance at the final step before arbitration.

Coveny then discussed the matter with District Lodge 142's President, David Supplee, and they determined that there was no chance of prevailing at arbitration on the grievance. They considered the reason for Escobar's termination and that ASIG had not tolerated on-the-job sleeping in the past. In addition, the video corroborated ASIG's reason for termination, and Escobar had never denied that he was the person depicted in it or that it was taken at the time and place alleged.

---

[5]Escobar does not point to evidence that he gave Dahlin additional facts that should have been included in the grievance or investigated.

13

Based on these considerations, Coveny's experience as a union representative, his knowledge of the CBA, the strength of the video, the nature of the misconduct, and Escobar's previous disciplinary record at work (which included a poor-performance notice and a demotion), Coveny decided not to pursue a further appeal. It was his view that Escobar's arguments about being sick and on his meal break would be unconvincing at arbitration because a lunch break nonetheless occurs during working hours, Escobar had not claimed a serious medical situation but that he was simply feeling unwell, and Escobar could have requested permission to have been relieved from the rest of his shift. Furthermore, Coveny did not believe that ASIG had an improper motive for the termination. ASIG had previously terminated other employees for sleeping on the job, and Coveny is unaware of the Union having taken any such case to arbitration. Dahlin and Coveny deny that their conduct with respect to Escobar's grievance was motivated by his membership in any protected class.

Escobar asserts generally in his brief that Dahlin and Coveny should have interviewed witnesses, "properly investigate[d] the facts," and "review[ed] any supporting documentation" to "establish unusual circumstances." (Pl.'s Corrected Resp. Union's Mem. at 5-6.) But Escobar fails to identify any witnesses, additional facts, or supporting documentation that the Union representatives should have discovered that would have assisted him. Indeed, as discussed above, Escobar does not actually deny that he was sleeping during his meal break; he stated at his deposition that he was "not sure" if he had fallen asleep, but also described himself as having woken up during the incident, and answered affirmatively several questions in which he was characterized as having woken up.

As for the pace of the grievance process, even if it could be said that the Union should have moved more swiftly through the grievance steps, mere negligence or possibly inept handling does not constitute a breach of the duty of fair representation. *See United Steelworkers of Am.,*

*AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990); *Ooley*, 961 F.2d at 1302. In any event, Escobar fails to explain how the outcome would have been different if the Union had acted more quickly in escalating the steps of the grievance. There is no evidence that ASIG denied the grievance on a timeliness ground or any other procedural ground. Escobar's complaint that the Union "failed to disclose critical information" to officers "voting" on the decision whether to arbitrate the grievance similarly misses the mark. It is undisputed that Coveny, not an unspecified group of officers, made that decision, and there is no evidence that he lacked critical information necessary for the decision-making process.

As for Coveny's decision not to pursue arbitration, a union is not obliged to take all member grievances to arbitration; only an "egregious disregard" for union members' rights constitutes a breach of the union's duty. *See Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003); *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995). Coveny pursued Escobar's grievance through several steps, and his actions belie the notion that he acted with egregious disregard for Escobar's rights. Coveny offered rational bases for his decision not to arbitrate the grievance, free from any discriminatory or improper motive, and Escobar does not present evidence to the contrary.[6]

---

[6]Escobar argues that the Union "helped several Caucasians and younger employees get their job backs [sic] for worse incidents but not him. This includes Roger Bahena and[.]" The sentence is unfinished. (Pl.'s Corrected Resp. Union's Mem. at 8.) Escobar does not cite evidence about Bahena's specific circumstances other than Escobar's own hearsay testimony that Bahena had damaged another company's truck and driven away, and Bahena had told him generally that the Union "helped him out." (Escobar Dep. 250-53.) Escobar also testified that Bahena is "Mexican American." (*Id.* 253.) This evidence does not create a genuine issue as to whether the Union handled Escobar's grievance differently or more expeditiously than those of other employees, much less that the Union's conduct was improperly motivated.

Escobar fails to point to evidence from which one could reasonably conclude that the Union's conduct with respect to his termination grievance was arbitrary, discriminatory, or in bad faith, or that the outcome of the grievance would have been different but for the Union's conduct. Accordingly, the Court will enter summary judgment in favor of the Union and against Escobar.

## CONCLUSION

Defendants' motions for summary judgment [48, 53] are granted. Judgment will be entered in favor of defendants, Aircraft Service International Group, Inc. and District Lodge 142, International Association of Machinists and Aerospace Workers, AFL-CIO, and against plaintiff, Julio Escobar. Civil case terminated.

**DATE**: August 12, 2019

**Ronald A. Guzmán**
**United States District Judge**